Reginald Wayne GOUDEAU, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 14–05–00946–CR, 14–05–00947–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 9, 2006.

George J. Reul, III, Houston, for appellant.

Donald W. Roger, Jr., Houston, for appellee.

Panel consists of Chief Justice HEDGES and Justices YATES and SEYMORE.

## OPINION

ADELE HEDGES, Chief Justice.

### I. BACKGROUND

The relevant facts were established at the motion to suppress hearing through the sole witness, Officer Christopher Hernandez. At approximately 12:52 a.m. on April 7, 2005, Officer Hernandez was traveling northbound on Crosby Lynchberg Road, in Harris County, when he passed appellant, Reginald Wayne Goodeau. Officer Hernandez noticed that appellant's vehicle had no front license plate. He then turned around and initiated a traffic stop of appellant's vehicle.

Appellant was alone in his vehicle, a 1969 Chevrolet El Camino which had a rear license plate labeled as "antique automobile." Officer Hernandez approached the vehicle and asked to see appellant's driver's license and proof of insurance. Officer Hernandez testified that during the course of this initial investigation, he noticed that appellant "had red bloodshot eyes," "spoke with a slurred speech," and was "fumbling around" for the requested documents. Officer Hernandez also noticed a container of alcohol on appellant's passenger seat. Based on these facts, Officer Hernandez requested that appellant perform some standardized field sobriety tests.

Once appellant exited his vehicle, Officer Hernandez testified that "he was walking very slowly and real carefully, not quite stumbling but very slowly and carefully." Appellant did not cooperate in performing the field sobriety tests. Officer Hernandez then placed appellant under arrest for driving while intoxicated.

Officer Hernandez performed an inventory search of appellant's vehicle pursuant to "our policy of the Sheriff's Department." During this inventory search, Officer Hernandez found a "black zipper bag," and after opening the bag, he discovered powder cocaine, crack cocaine, liquid PCP, and two "glass crack pipes" inside.

Appellant was arrested and charged with felony driving while intoxicated and possession of a controlled substance. Appellant filed a motion to suppress all evidence discovered during the search, which the trial court denied. Appellant subsequently pled guilty to both charges and was sentenced to ten and fifteen years incarceration, respectively.

### II. ANALYSIS

In seven points of error, appellant challenges the trial court's denial of his motion to suppress evidence. We review a trial court's denial of a motion to suppress for an abuse of discretion. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim.App. 2000); *Flores v. State*, 172 S.W.3d 742, 748 (Tex.App.-Houston [14th Dist.] 2005, no pet.). When reviewing the denial of a motion to suppress, we review factual findings for clear error and the application of those facts to the law *de novo*. *Carmouche*, 10 S.W.3d at 327; *Guzman v. State*, 955 S.W.2d 85 (Tex.Crim.App.1997). Because the historical facts are not disputed in this case and the only issues are the application of those facts to the law, we apply a *de novo* standard of review.

■ In appellant's first four points of error, he complains about the reasonableness of Officer Hernandez's investigatory stop. The United States Supreme Court has created a dual prong analysis for the reasonableness of investigatory stops. *See Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Davis v. State*, 947 S.W.2d 240, 242 (Tex.Crim.App.

1997) (discussing *Davis* at 242–245). First, the initial stop must be justified. *Terry*, 392 U.S. at 20, 88 S.Ct. 1868. Second, the scope of the investigation must be reasonably related to the circumstances that justified the interference in the first place. *Id.* Appellant complains that neither of these prongs was satisfied.

■ In his first point of error, appellant contends that there was no justification for the stop. An automobile stop is justified when an officer has reasonable suspicion to believe that a traffic violation has occurred. *Terry*, 392 U.S. at 29, 88 S.Ct. 1868; *Woods v. State*, 956 S.W.2d 33, 35 (Tex.Crim.App.1997). The burden is on the State to demonstrate the reasonableness of the investigatory stop. *Bishop v. State*, 85 S.W.3d 819, 822 (Tex.Crim.App. 2002); *Aviles v. State*, 23 S.W.3d 74, 79 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). Whether or not an officer has reasonable suspicion is evaluated from an objective perspective. *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *United States v. Lopez–Valdez*, 178 F.3d 282, 288 (5th Cir. 1999); *Aviles*, 23 S.W.3d at 77. In other words, looking at the facts available to the officer at the moment of the investigation, would a person of reasonable caution believe that a traffic violation occurred. *Lopez–Valdez*, 178 F.3d at 288; *Aviles*, 23 S.W.3d at 77. An officer's suspicion of an alleged traffic violation, however, cannot be based on a mistaken understanding of traffic laws. *United States v. Granado*, 302 F.3d 421, 423 (5th Cir.2002); *Lopez–Valdez*, 178 F.3d at 289; *United States v. Miller*, 146 F.3d 274, 279 (5th Cir.1998); *Gaines v. State*, No. 04–00–00050–CR, 2001 WL 99630, at *4 (Tex.App.-San Antonio Feb.7, 2001, pet. ref'd) (not designated for publication). An officer's honest but mistaken understanding of the traffic law which prompted his stop is not an exception to the reasonable suspicion requirement. *Lopez–Valdez*, 178 F.3d at 289; *Miller*, 146 F.3d at 279.

Officer Hernandez initiated the traffic stop because he "observed he [appellant] had no license plate attached to the front of his vehicle as required by State law." In other words, appellant did not have both a front and back license plate as required by the Texas Transportation Code. TEX. TRANSP. CODE § 502.404(a). Appellant argues that because his car was an "exhibition vehicle," as defined by TEX. TRANSP. CODE § 504.502, he was required to have one license plate only on the rear of the vehicle. Therefore, he argues, the officer could not have had reasonable suspicion to initiate the traffic stop because his suspicion was solely based on a mistaken understanding of the law.

The Fifth Circuit and Texas appellate courts have addressed the issue of an officer's mistake of law in the context of investigative stops. *Lopez–Valdez*, 178 F.3d at 289; *Miller*, 146 F.3d at 279; *Aviles*, 23 S.W.3d at 77. These courts have clearly held that the reasonable suspicion required to initiate a traffic stop cannot be based on a mistake of law. *Lopez–Valdez*, 178 F.3d at 289 (refusing to find a good-faith exception to the exclusionary rule when a mistake made in good faith is based on a mistake of law); *Miller*, 146 F.3d at 279 (holding that the stop was unreasonable because the officer's reason for stopping the suspect, flashing a turn signal without changing lanes, was not a violation of law); *Aviles*, 23 S.W.3d at 77 (holding that the stop was unreasonable when the officer's reason for the stop, changing lanes simultaneously, was not a violation of the law). For instance, in *Lopez–Valdez*, the officer stopped the suspect because of a broken taillight cover. The cover for the taillight was broken but the bulb itself was still intact and functioning. The court held

that "no well-trained ... officer could reasonably believe that white light appearing with red light through a cracked red taillight lens constituted a violation of traffic law." *Lopez–Valdez,* 178 F.3d at 289. In *Aviles,* the officer stopped the suspect for making a "multiple lane change in a single maneuver." *Aviles,* 23 S.W.3d at 77. This court found that the stop was unreasonable because making a multiple lane change in a single maneuver is not a *per se* violation of the law, and the particular lane change made by the suspect was not a violation of any statute. *Id.* at 78–79.

By contrast, courts recently have held that an officer's mistake of law does not necessarily render the traffic stop unreasonable. *United States v. Delfin–Colina,* 464 F.3d 392 at 398 (3rd Cir. Sep.22, 2006) ("[A] mistake of law is only unreasonable when the officer does not offer facts that objectively show that the identified law was actually broken."); *Aviles,* 23 S.W.3d at 77–79 (implicitly reaching this conclusion in evaluating the reasonableness of the officer's stop despite the officer's stated mistaken legal basis for the stop). Reasonable suspicion is viewed from the eyes of a reasonable person. *Whren,* 517 U.S. at 810, 116 S.Ct. 1769. A reasonable person has a full and correct understanding of the law. *Delfin–Colina,* 464 F.3d 392, 2006 WL 2708496, at *7 (noting that an "objective review of the facts" includes a correct interpretation of the law allegedly violated). The dispositive question is, therefore, considering the facts available to the officer during the investigative stop, would a reasonable officer, or one who was correctly interpreting the law, have had reasonable suspicion to initiate the stop?

We first examine whether the investigatory stop was justified under the first prong of *Terry.* Under the Texas Transportation Code framework, generally a vehicle is required to have two license plates. TEX. TRANSP. CODE § 502.404(a). Section 504.502 creates an exception to this general rule in allowing certain "exhibition vehicle[s]" to have only one rear license plate. TEX. TRANSP. CODE § 504.502. Section 504.502, however, has certain requirements that must be met in order for it to apply.[1] TEX. TRANSP. CODE § 504.502(a). If the requirements cease to be met, then § 504.002(9) applies which states that if the vehicle ceases to meet the specialty license plate requirements, the owner must return the license plate. TEX. TRANSP. CODE § 504.002(9). If the owner no longer qualifies for a specialty license plate and is required to return it, then necessarily, if the owner continues "to operate [his vehicle] on a public highway," the general provision requiring vehicles to have two license plates will obtain. *See* TEX. TRANSP. CODE § 502.404(a) ("A person commits an offense if the person operates on a public highway during a registration period a passenger car or commercial motor vehicle that does not display two license plates, at the front and rear of the vehicle."). If the owner fails to return the license plate when the § 504.502 requirements are not met and continues to operate his vehicle, not only will the owner violate § 504.002(9), but he will also violate § 502.404 because the exception to the general rule requiring two license plates will no longer apply.[2]

1. TEX. TRANSP. CODE § 504.502(a) requires that the vehicle:

 (1) is at least 25 years old..........
 (2) is a collector's item;
 (3) is used exclusively for exhibitions, club activities, parades, and other functions of

public interest and is not used for regular transportation; and
 (4) does not carry advertising.

2. Note that the language of § 504.502(a) seems to only create a mandate on when the State issues a specialty license plate ("the

Accordingly, a reasonable person in Officer Hernandez's position correctly interpreting the Texas Transportation Code would know that generally a license plate is required in the front and in the rear of the vehicle. The only time two license plates are not required is when an exception applies, such as that under § 504.502. Looking at the facts from Officer Hernandez's perspective, we must determine whether there were sufficient facts for a reasonable person to determine that two license plates were required.

Officer Hernandez testified that when he passed appellant going the opposite direction, he noticed that appellant had no front license plate. A person with full knowledge of the law would know that generally two license plates are required. Because Officer Hernandez was moving in the opposite direction from appellant, he would not have had an opportunity to see the back license plate marked as an antique license plate before he turned his vehicle around to initiate the stop. One might speculate that once Officer Hernandez turned around and was behind appellant's vehicle, he could have been in a position to observe the antique license plate on the rear of appellant's car, thus,

putting him on notice that appellant might not have been required to have two license plates. There is no evidence in the record that Officer Hernandez, in fact, noticed the antique license plate, and we may only conduct our analysis based on the record. Additionally, the fact that the stop was initiated at 12:52 a.m. made it more reasonable for a person to conclude that the 'exhibition vehicle' exception to the general requirement of two license plates did not apply, as it is unlikely that a vehicle would be used for exhibition purposes at that time of night. Under § 504.202(9), if appellant no longer met the requirements for an antique license plate, he was no longer eligible to enjoy its benefits (such as displaying only a back license plate), and he would have had a statutory duty to return the plate to the State. TEX. TRANSP. CODE § 504.002(9). His continued use of the single rear plate would have been a statutory violation. Therefore, at the time Officer Hernandez initiated the stop, he could have had reasonable suspicion that appellant was violating § 502.404's requirement that an individual have both a front and rear license plate. As a result, the stop was reasonable under *Terry's* first prong. Accordingly, we overrule appellant's first point of error.

department shall issue ...”). TEX. TRANSP. CODE § 504.502(a). One might argue that the statute is ambiguous as to whether it places any duties or limits on the issuee of the antique license plate. However, when viewing § 504.502 as a whole and in the context of § 504 in general which encompasses all specialty plate rules, it becomes clear that § 504.502 is not only a mandate for the State, but it also limits when the issuee may rightfully use the specialty license plate. First, § 504.002(9), which is a general specialty plate provision applying to all of § 504 (including exhibition vehicles), clearly states that if any of the specialty license plate “requirements” are not met, then the issuee must return the license plate. TEX. TRANSP. CODE § 504.002(9). Second, the language of § 504.502(g) implies a duty on the issuee in

stating “an owner of a vehicle registered under this subsection who violates this section commits an offense.” § 504.502(j) also implies a duty in defining what is an affirmative defense to prosecution under § 504.502. TEX TRANSP. CODE § 504.502(g)-(j). In order for one to violate or offend § 504.502, by implication, there must be a duty to violate. Finally, one must pragmatically consider that when the Department of Transportation issues the license plate, it is often relying on the honesty of the issuee (i.e. the fact that the vehicle is a collector's item, that it is actually being used for exhibition purposes); therefore the nature of § 504.502 necessitates a duty on the issuee or else there would be nothing to restrain an individual from manipulating the rules for his benefit.

Appellant's second and third points of error both argue that the investigative detention of appellant was unreasonable because there was no investigation. While appellant separates these two points of error from his fourth point, which argues that the scope of the investigation was not reasonably related to the circumstances that justified the initial interference, all three points are actually different flavors of the same argument. If there is no investigation, then quite obviously the scope of the investigation will not be related to the initial justification. Therefore, we will consider all three points together as a criticism of the scope of the investigation.

■ The second prong of *Terry* requires that an investigative detention be reasonably related in scope to the circumstances that justified the interference in the first place. *Terry*, 392 U.S. at 19–20, 88 S.Ct. 1868. The investigation must also last no longer than is necessary to effectuate the purposes of the stop. *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Davis*, 947 S.W.2d at 245; *Simpson v. State*, 29 S.W.3d 324 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd.). The investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time. *Royer*, 460 U.S. at 500, 103 S.Ct. 1319; *Davis*, 947 S.W.2d at 245. Once the reason for the stop has been satisfied, the stop may not be used as a "fishing expedition for unrelated criminal activity." *Ohio v. Robinette*, 519 U.S. 33, 41, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) (Ginsberg, J., concurring); *Davis*, 947 S.W.2d at 243.

■ During an investigation of a traffic violation, if an officer develops reasonable suspicion that another violation has occurred, the scope of the initial investigation expands to include the new offense. *See Sims v. State*, 98 S.W.3d 292, 295–97 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd) (finding that the officer had reasonable suspicion to investigate criminal activity beyond the reason for the stop); *Powell v. State*, 5 S.W.3d 369, 378–79 (Tex. App.-Texarkana 1999, pet. ref'd) (holding that because of appellant's nervousness, the inconsistency in his statements, prior drug arrests, and his dishonesty about prior arrests, the officer had reasonable suspicion to investigate beyond the initial traffic offense); *Mohmed v. State*, 977 S.W.2d 624, 628 (Tex.App.-Fort Worth 1998, pet. ref'd) (holding that the smell of marihuana, during the officer's investigation of suspect's unsafe driving, supported reasonable suspicion to investigate drug activity).

■ Officer Hernandez began his investigation by asking to see appellant's driver's license and insurance, a valid procedure under Texas law. *See Davis*, 947 S.W.2d at 245 n. 6; *Mohmed*, 977 S.W.2d at 628; *Ortiz v. State*, 930 S.W.2d 849, 856 (Tex.App.-Tyler 1996, no pet.). During this exchange, Officer Hernandez testified that he noticed appellant had bloodshot eyes, slurred his speech, and fumbled around for his insurance papers. Officer Hernandez also noticed an open container of alcohol on the passenger seat beside appellant. These facts clearly give rise to a reasonable suspicion that appellant may have been driving while intoxicated. *See, e.g., Perales v. State*, 117 S.W.3d 434, 439 (Tex.App.-Corpus Christi 2003, no pet.) (holding that there was reasonable suspicion of suspect driving while intoxicated when suspect had red eyes, the officer smelled alcohol, and an open container was in plain view); *Rubeck v. State*, 61 S.W.3d 741, 745 (Tex.App.-Fort Worth 2001, no pet.) (holding that slurred speech, and the strong smell of alcohol on the appellant's breath gave sufficient reasonable suspicion to investigate driving while intoxicated vio-

lation). At that point, the scope of the investigation expanded to include a violation of driving while intoxicated, and Officer Hernandez was not limited to his investigation of a § 504.502 violation. *See Davis*, 947 S.W.2d at 245; *Sims*, 98 S.W.3d at 295–97; *Powell*, 5 S.W.3d at 378–79; *Mohmed*, 977 S.W.2d at 628. Appellant does not argue that Officer Hernandez's investigation of him for driving while intoxicated was unreasonable.

> Appellant argues that there was no investigation in that Officer Hernandez made no observation, statement, or comment about: (1) the nature of the stop; (2) the fact that the Appellant's vehicle had an "antique plate" prominently displayed in the rear; and/or (3) any reference to or questions regarding the purpose of the Appellant's driving of the antique automobile that evening.

As support for this contention, appellant cites *Burkes v. State*, 830 S.W.2d 922 (Tex. Crim.App.1991). *Burkes* distinguishes an investigatory detention of an individual, which requires only reasonable suspicion to initiate, from an arrest, which requires probable cause. *See id.* at 925 ("Accordingly, we hold ... handcuffing appellant and placing him on the ground constituted an arrest, and not a mere detention.... As such, we ... remand this cause to the court of appeals for a determination of probable cause."). In contrast, appellant does not suggest that probable cause was required to be shown in this case. Rather, he argues that the lack of an investigation rendered the stop unreasonable. *Burkes* did not address the effect that the absence of an investigation would have on the reasonableness of a detention, other than to say that probable cause would be required. Consequently, appellant's reliance on *Burkes* is misplaced.

The only case that appellant cites in which a Texas court found a stop unrea-

sonable because the investigation exceeded the scope of the initial justification is *Davis*. In *Davis*, the officers stopped the driver when the officers suspected that he was intoxicated. *Davis*, 947 S.W.2d at 245. Although the officers determined that the driver was not intoxicated, they continued to search despite inadequate further reasonable suspicion. *Id.* This case involves entirely different facts. Officer Hernandez had not completed his investigation when he developed reasonable suspicion for appellant's driving while intoxicated. In fact, he had just started his investigation by asking for appellant's driver's license and insurance. *See Mohmed*, 977 S.W.2d at 628 (holding that an officer may ask for identification, driver's license, insurance, and registration during a traffic stop); *Ortiz*, 930 S.W.2d at 856. Shortly thereafter, Officer Hernandez developed reasonable suspicion that appellant was driving while intoxicated. As mentioned above, the scope of the investigation then broadened and continued. We overrule appellant's second, third, and fourth points of error.

 In his fifth point of error, appellant complains that the trial court committed reversible error in allowing Officer Hernandez to read his offense report during his testimony. Appellant complains that this testimony is hearsay under Texas Rules of Evidence 802 and that the trial court's error was prejudicial to him or contributed to his conviction. Tex.R. Evid. 802. Specifically, appellant complains about the following exchange between the State and Officer Hernandez:

Q: After you observed him to have red bloodshot eyes and slurred speech and the length of time he took to retrieve the documents, did you notice anything else?

A: I observed an open container of alcohol on his passenger side seat, a 16–ounce bottle of Corona Extra.

Q: Where on the seat?

A: Exactly? It was on the passenger seat?

Appellant's Counsel: Your honor, if the record may reflect, the witness is viewing his offense report. I would object to that. If he needs to refresh his recollection, I would ask that a proper predicate be laid.

The Court: Overruled

A: I don't recall exactly. On the seat.

Q: But do you recall that it was open?

A: Yes ma'am.

Q: As far as you know, is that also a violation of the code?

A: Yes, ma'am, having an open container is a violation.

Error in the admission of evidence constitutes nonconstitutional error. *See* TEX. R.APP. P. 44.2(b); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998). As such, only an error that affects a substantial right of the defendant constitutes reversible error. *See* TEX.R.APP. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997); *Plouff v. State*, 192 S.W.3d 213, 222 (Tex.App.-Houston [14th Dist.] 2006, no pet.).

The record is unclear as to whether Officer Hernandez was actually viewing his offense report. Moreover, it is apparent that any error in admitting this testimony was harmless. Officer Hernandez later testified without objection that there was an open container on the seat, making the previous testimony cumulative. *See Ferguson v. State*, 97 S.W.3d 293, 298 (Tex. App.-Houston [14th Dist.] 2003, pet. ref'd) (holding that error was harmless because identification was cumulative). Additionally, the open container in plain view was only one fact among many establishing

that Officer Hernandez had reasonable suspicion to believe that appellant was driving under the influence. Officer Hernandez also stated that appellant had bloodshot eyes, slurred his speech, and was "fumbling around" for his papers. These facts alone would be sufficient to prove reasonable suspicion. *See, e.g., Rubeck v. State*, 61 S.W.3d 741, 745 (Tex. App.-Fort Worth 2001, no pet.) (holding that the odor of alcohol on appellant's breath and his slurred speech was a sufficient factual basis for reasonable suspicion that appellant was driving while intoxicated); *Cook v. State*, No. 14-04-01166-CR, 2006 WL 1140889, at *2 (Tex.App.-Houston [14th Dist.] May 2, 2006, no pet.) (not designated for publication) (finding that slurred speech, bloodshot eyes, and alcohol on suspect's breath were sufficient facts to support reasonable suspicion of driving while intoxicated). Consequently, any error could not have had a substantial or injurious effect in determining the jury's verdict. *See King*, 953 S.W.2d at 271. We overrule appellant's fifth point of error.

▮ In appellant's sixth point of error, he complains that Officer Hernandez impermissibly seized certain evidence in violation of his constitutional rights. More specifically, appellant argues that Officer Hernandez's opening of his zipper bag was an "unconstitutional inventory search and/or inventory that was merely a ruse for a search." Appellant has failed to preserve this issue for appeal.

In order for a complaint to be presented on appeal, a timely request, objection, or motion must have been made to the trial court stating the grounds for the ruling "with sufficient specificity to make the trial court aware of the complaint." TEX.R.APP. P. 33.1(a)(1)(A). Appellant's written motion to suppress and his arguments at the suppression hearing did not complain about the inventory search of his car.

Therefore, appellant has waived this issue for appeal. *See* TEX.R.APP. P. 33.1. Consequently, we overrule appellant's sixth point of error.

In his final point of error, appellant complains that "the trial court abused its discretion and failed to hold the State to burden of proof by speculating and assuming facts not in evidence." Appellant appears to assert that the trial court abused its discretion in validating Officer Hernandez's investigative stop. Appellant contends that the record contains no facts showing that Officer Hernandez had reasonable suspicion to pull appellant over. Instead, he argues, the judge simply assumed certain facts in determining that reasonable suspicion was shown. However, as we have shown above, there *are* sufficient facts in the record for one to conclude that Officer Hernandez had reasonable suspicion to pull appellant's vehicle over. As a result, the trial court did not abuse its discretion in finding that the State met its burden. We overrule appellant's seventh point of error.

We affirm the trial court's judgment.