TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-07-00401-CR






Ramon Garza Jr., Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT

NO. CR2006-193, HONORABLE GARY L. STEEL, JUDGE PRESIDING





O P I N I O N


 A jury found appellant Ramon Garza, Jr., guilty of the second-degree felony offense
of possessing a controlled substance (namely methamphetamine) in an amount of four grams or more
but less than 200 grams. See Tex. Health & Safety Code Ann. § 481.102(6) (West Supp. 2007),
§ 481.115(a), (d) (West 2003). The jury assessed punishment at seventeen years' in prison and a
$10,000 fine. On appeal, Garza contends that the trial court erred in failing to hold a hearing on his
motion for new trial, that the trial court abused its discretion in denying his motion to suppress
evidence, and that the evidence was legally insufficient to support the jury's finding that the police
had reasonable suspicion to detain him. We affirm the trial court's judgment.


BACKGROUND

 On the night of March 14, 2006, officers Christopher Peltier and John Sullivan of the
New Braunfels Police Department were parked in their respective patrol cars on Chestnut Street in
New Braunfels, with Peltier's car facing north and Sullivan's car facing south. Peltier testified that
at approximately 11:30 p.m., he observed a truck turn onto Chestnut Street with a defective left brake
light. Peltier pointed out the car to Sullivan, who testified that he saw the defective brake light in
his rearview mirror, then physically turned around and saw it again. Both officers pursued the
vehicle, and Sullivan ultimately caught up to it and initiated a traffic stop. Sullivan testified that as
the vehicle turned into the convenience store parking lot where the traffic stop took place, the brake
light malfunctioned again. Footage from Sullivan's in-car camera, which he activated after he began
pursuing the vehicle, was entered into evidence and played for the jury. After watching the video,
Sullivan acknowledged that the brake light appears to work properly two times during the pursuit, (1)
but stated that he made the traffic stop based on his personal observation, as well as Peltier's
observation, that prior to the activation of the in-car camera, the vehicle's left brake light had failed
to illuminate when the brakes were applied. 

 Sullivan testified that after making the traffic stop, he inspected the vehicle's left
brake light, observing that "it appeared to have been in a rear-end collision. The glass had been
busted and then taped over with red tape." Sullivan then began to converse with Garza, the driver
of the vehicle, and observed a large butane torch on the console. Sullivan testified that based on his
training and experience, such torches are often used to smoke methamphetamines or crack cocaine. 
Garza, who was unable to provide a driver's license or proof of insurance, began to make phone calls
to the owner of the vehicle in an attempt to locate proof of insurance. Sullivan testified that during
this time, Garza placed his phone in his right pocket, which tightened Garza's pocket enough that
Sullivan was able to see the outline of a small handgun. Sullivan then conducted a pat-down search
for officer-safety purposes and found a .22 Magnum revolver on Garza's person. Sullivan placed
him under arrest for failure to have proof of insurance and conducted a search incident to the arrest,
which produced two packages of methamphetamines and a glass pipe. 

 The jury convicted Garza of possessing methamphetamine in an amount of four grams
or more but less than 200 grams, see id. § 481.102(6), § 481.115(a), (d), and assessed punishment
at seventeen years' confinement and a $10,000 fine. Garza filed a motion for new trial, which was
overruled by operation of law, and this appeal followed.


STANDARD OF REVIEW


 Garza argues on appeal that the trial court erred in failing to hold a hearing on his
motion for new trial asserting ineffective assistance of counsel, that the trial court erred in denying
his motion to suppress evidence, and that the evidence was legally insufficient to support the jury's
finding that the police had reasonable suspicion to detain him.

 Whether or not to grant a new trial on the ground of ineffective assistance of
counsel lies within the discretion of the trial court. Reyes v. State, 849 S.W.2d 812, 813 (Tex. Crim.
App. 1993). A trial court abuses its discretion only when its decision is so clearly wrong as to
lie outside the zone of reasonable disagreement. McDonald v. State, 179 S.W.3d 571, 576
(Tex. Crim. App. 2005).

 When reviewing a trial court's decision on a motion to suppress, we apply a
bifurcated standard of review, giving almost total deference to a trial court's determination of
historical facts and reviewing the court's application of search and seizure law de novo. 
Maxwell v. State, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); Guzman v. State, 955 S.W.2d 85,
88-89 (Tex. Crim. App. 1997). Where the trial court did not make explicit findings of historical
facts, we review the evidence in a light most favorable to the trial court's ruling and assume that the
trial court made implicit findings of fact supported in the record. Carmouche v. State, 10 S.W.3d
323, 327-28 (Tex. Crim. App. 2000). The district court is the sole judge of the credibility of the
witnesses and their testimony. Maxwell, 73 S.W.3d at 281. Where the record does not reflect the
trial court's legal theory for denying the motion to suppress evidence, the ruling must be affirmed
if it can be upheld on any valid theory of law applicable to the case. Weide v. State, 157 S.W.3d 87,
94 (Tex. App.--Austin 2005, pet. ref'd).

 In reviewing the legal sufficiency of the evidence, we must view the evidence in the
light most favorable to the verdict to determine whether any rational trier of fact could have found
the essential elements of the offense beyond a reasonable doubt. Swearingen v. State, 101 S.W.3d
89, 95 (Tex. Crim. App. 2003). When faced with conflicting evidence, we presume the trier of
fact resolved conflicts in favor of the prevailing party. State v. Turro, 867 S.W.2d 43, 47
(Tex. Crim. App. 1993).


DISCUSSION

Motion for New Trial

 An evidentiary hearing on a motion for new trial is necessary only if the motion and
accompanying affidavits raise issues not determinable from the record, upon which the accused
could be entitled to relief. Wallace v. State, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003); Reyes,
849 S.W.2d at 816. The motion and affidavits "need not establish a prima facie case" for a new trial,
but must assert reasonable grounds for relief that are not determinable from the record. 
Jordan v. State, 883 S.W.2d 664, 665 (Tex. Crim. App. 1994).

 Garza's motion for new trial asserts that he was denied the effective assistance of
counsel, alleging that his counsel was deficient in the following ways:


Counsel did not discuss the full range of options available to the Defendant in dealing
with the plea offer made by the State. Counsel recognized that "everything depended
on the motion to suppress," yet he failed to discuss the possibility of an early,
"dispositive," hearing on the motion followed by a guilty plea with preservation of
the issue addressed in the motion for appellate purposes. Had that option been
investigated and offered to the Defendant, he would have accepted it.


Counsel failed to request that the Court conduct an early, "dispositive," hearing on
the motion to suppress. Without knowing what action the Court would take on the
motion sufficiently in advance of the scheduled trial, Counsel denied the Defendant
the opportunity to consider the full range of options available to him.


Counsel did not discuss any options other than a jury trial. Given his correct advice
to the Defendant that "everything depended on the motion to suppress," Counsel
should have advised the Defendant that other options, such as a bench trial on the
merits, an open plea to the Court, or a negotiated plea permitting an appeal of the
Court's ruling on the motion to suppress were viable possibilities.


Counsel's advice that the Defendant reject the offered plea bargain was because
counsel "didn't believe in caps." The offer was that the Defendant would plead
"open" to the Court, and that the maximum sentence which could be assessed would
be twelve (12) years in the penitentiary. This conduct was deficient because the
advice was nonsensical and failed to offer the Defendant any real advice. The offer
should have been rejected or accepted based on the possibility of a 12 year sentence
being imposed, rather than on counsel's personal attitudes.


Counsel failed to investigate the possibility of a plea bargain after the adverse ruling
on the Motion to Suppress. Had counsel pursued a plea bargain, the Defendant
would have accepted it had the punishment offered been twenty years or less.

 While Garza contends that his motion for new trial raises matters that are dependent
on the demonstration of facts outside the record, the record reflects otherwise. Prior to voir dire, the
trial court stated, "It's my understanding that the district attorney wants to make a record regarding
the [plea bargain] offer." Garza was placed under oath, and the following exchange took place:


DEFENSE COUNSEL: Mr. Garza and I met, Judge, last Thursday on the jury
docket call back here in the custody area. That would
be May 24, '07. I made an entry on my file,
"Mr. Soane has offered a 12-year cap." There were
some discussions about my client working with law
enforcement to do some patriotic things, but since he
has been incarcerated he's not been able to do that. 
As so, therefore, that's kind of off of the table and not
a consideration any longer. 


 . . . 


 But in any event, we're here for trial today and that
has not occurred. So therefore he either enters a plea,
I have explained to him, or he goes to trial. And the
plea offer is a 12-year cap. I discussed with him what
a cap is, that this Court would have
discretion--absolute discretion, when a PSI was
performed--a Pre-Sentence Investigation report by
probation and he would be out on a personal
recognizance bond if that were to occur, as Mr. Soane
indicates is part of the offer. And he--he would
enter--and this Court then could go all the way from
probation, in its sentencing that would occur, up to 12
years in prison.


 And I've got to say that I have--I'd like to maintain
attorney/client confidentiality on my advice to him. 
But his decision, knowing all of that, is to proceed to
trial and not run the risk of the Court determining his
punishment. That is my client's decision.


TRIAL COURT: Okay.


DEFENSE COUNSEL: Regardless of my recommendations.


TRIAL COURT: I understand.


DEFENSE COUNSEL: Is that correct, Mr. Garza?


GARZA: Yes, sir.


TRIAL COURT: Okay.


DEFENSE COUNSEL: Is there anything that I misstated or left out?


GARZA: No, sir.



 A trial court has discretion to decide a motion for new trial based on affidavits alone,
particularly where the affiants have already appeared in the trial court, so that "the trial judge ha[s]
already had an opportunity to evaluate the affiants" and is "familiar with the history and the facts of
the case." Holden v. State, 201 S.W.3d 761, 764 (Tex. Crim. App. 2006). A trial court's
determination under such circumstances is entitled to deference on appeal. Id. Garza was the sole
affiant for his motion for new trial, and he not only appeared in the trial court prior to filing his
affidavit, but appeared specifically to discuss the events that were the basis for his motion for new
trial, namely, that his counsel had explained to him the consequences of refusing the plea bargain
and proceeding to a jury trial. As a result, we cannot hold that the trial court abused its discretion
in overruling Garza's motion without holding a hearing. 

 Furthermore, even if we were to take the allegations made in the motion for new trial
as true, Garza has not demonstrated that reasonable grounds exist that would entitle him to relief. 
Four out of the five allegations Garza made in his motion were based on counsel's alleged failure
to explain or pursue either (1) the possibility of an earlier suppression hearing or (2) various
alternatives to a jury trial, in light of counsel's advice that "everything depended on the motion to
suppress." Garza explicitly states in both his motion for new trial and the accompanying affidavit
that he would have accepted a plea bargain of up to 20 years' incarceration after the motion to
suppress was denied. However, the actual sentence imposed by the jury was only 17 years'
incarceration. In light of the fact that Garza received a sentence within the range that he avers he
would have accepted in a plea bargain after the motion to suppress was denied, he cannot now claim
that counsel's allegedly deficient conduct related to the motion to suppress sufficiently prejudiced
the defense to establish ineffective assistance of counsel. See Strickland v. Washington,
466 U.S. 668, 687 (1984) (holding that defendant must show that counsel's "deficient performance
prejudiced the defense" in order to succeed on claim of ineffective assistance). 

 As for the sole remaining allegation in the motion for new trial, Garza has similarly
failed to show reasonable grounds that would entitle him to relief. Garza alleges that counsel
committed deficient conduct by advising him to refuse the plea bargain because counsel "didn't
believe in caps." However, unlike the facts of Reyes, where the motion for new trial alleged
ineffective assistance due to counsel's failure to inform the appellant of a plea bargain offered by the
State, 849 S.W.2d at 816, Garza does not allege that his counsel failed to provide him with complete
or accurate information. Instead, he merely alleges that he was displeased with the results of
counsel's advice, based on counsel's subjective opinion that he "didn't believe in caps." A
defendant does not "receive ineffective assistance simply because he relied on his attorneys'
professional opinions and unsuccessful trial strategy." Flores v. State, 18 S.W.3d 796, 800
(Tex. App.--Austin 2000, no pet.). Therefore, even if we took as true Garza's allegation that
counsel advised him to refuse the plea bargain because counsel "didn't believe in caps," Garza has
not shown that reasonable grounds exist that would entitle him to relief. 

 Because we have determined that Garza's motion for new trial failed to raise issues
not determinable from the record upon which he could be entitled to relief, we overrule
Garza's first issue.


Motion to Suppress

 In his second issue on appeal, Garza argues that the trial court abused its discretion
in denying his motion to suppress because the police did not have reasonable suspicion to justify his
detention, and therefore all evidence seized after the traffic stop was inadmissible as the fruit of an
unconstitutional seizure. (2) See Hernandez v. State, 963 S.W.2d 921, 924 (Tex. App.--San Antonio
1998, pet. ref'd) ("[E]vidence obtained as the fruit of an unconstitutional seizure is inadmissible."). 

 A police officer may stop an automobile when that officer has reasonable suspicion
to believe that a traffic violation has occurred. Goudeau v. State, 209 S.W.3d 713, 716
(Tex. App.--Houston [1st Dist.] 2006, no pet.); see also Lewis v. State, 502 S.W.2d 699, 702
(Tex. Crim. App. 1973) (holding that traffic stop based on observation of defective brake light was
valid detention). "An officer's suspicion of an alleged traffic violation, however, cannot be based on
a mistaken understanding of traffic laws." Id. Once a suspect has been lawfully detained for
investigation, the officer may conduct a limited search for weapons, as Sullivan did in the present
case, where it is reasonably warranted for his safety and the safety of others, even in the absence of
probable cause. Rodriguez v. State, 975 S.W.2d 667, 675-76 (Tex. App.--Texarkana 1998,
pet. ref'd). Sullivan testified that he initially stopped Garza's vehicle based on his observation that
the vehicle had a defective brake light. As a result, the motion to suppress turns on whether, at the
time he initiated the traffic stop, Officer Sullivan had reasonable suspicion to believe that Garza had
committed a traffic violation.

 During the hearing on the motion to suppress, both Sullivan and Peltier testified that
they had witnessed the brake light malfunction before the in-car camera was activated and Sullivan
agreed that the in-car camera video shows the brake light operating properly twice after Sullivan
began pursuit. However, Garza acknowledges on appeal that "things do, mysteriously, malfunction
and then fix themselves when brought under the scrutiny of human observation," so that a reasonable
person could assume that the brake light in question malfunctioned at the time the officers first
observed the vehicle, yet later operated properly in front of the camera. Because the trial court is the
sole judge of the credibility of the witnesses and their testimony on a motion to suppress,
Maxwell v. State, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002), we may not second-guess the trial
court's determination that the police officers' testimony regarding the defective brake
light was credible. 

 Garza argues, however, that even if the officers did observe a defective brake light 
on the vehicle, the traffic stop was not justified by reasonable suspicion because Garza was not
committing a traffic violation under Texas law. It is a violation of the law to operate a motor vehicle
with equipment that does not comply with the transportation code. See Tex. Transp. Code Ann.
§ 547.004(a)(2) (West Supp. 2007). Section 547.323 of the transportation code specifies that a car
manufactured or assembled after 1959 (3) must be equipped with at least two functioning stoplamps,
mounted on the rear of the vehicle. (4) Id. § 547.323 (West 1999).

 The video taken from Sullivan's in-car camera reflects that Garza's vehicle was
equipped with a third stoplamp, located above the rear window of the cab, and there is no evidence
that this third stoplamp malfunctioned on the night of the offense. Garza contends that because the
right stoplamp and the stoplamp on the cab of the truck were both operating properly at all relevant
times, he fulfilled the transportation code's requirement of two stoplamps and therefore the officers
could not have had reasonable suspicion that he was committing a traffic violation. We disagree.

 Section 547.3215 of the transportation code adopts the federal motor vehicle safety
standards, so that a violation of such standards constitutes a violation of the transportation code. Id.
§ 547.3215 (West 1999) ("[L]ighting, reflective devices, and associated equipment on a vehicle or
motor vehicle must comply with the current federal standards in 49 C.F.R. Section 571.108 . . . ."). 
For vehicles of less than 80 inches in overall width, (5) the federal standards specifically require two
stoplamps to be mounted on the rear of the vehicle. See 49 C.F.R. § 571.108, S5.1.1, Tables III, IV. 
These stoplamps must be mounted with "one on each side of the vertical centerline, at the same
height, and as far apart as practicable." Id. at Table IV. The federal regulations also require a third
stoplamp, described as a "high-mounted stoplamp," to be mounted on the vertical centerline. Id. at
Tables III, IV. At the hearing on the motion to suppress, the officers testified that they observed
Garza driving a vehicle that did not have two stoplamps mounted at the same height, on each side of
its vertical centerline. Therefore, because we must defer to the trial court's determination that the
officers' testimony was credible, we hold that by driving a vehicle with a defective left brake light,
Garza violated the federal motor vehicle safety standards, and by extension, violated Texas
Transportation Code section 547.3215. (6)

 Garza argues on appeal that the federal motor vehicle safety standards only require that
a vehicle be equipped with a certain number of stoplamps in certain locations, and that there is no
requirement that such stoplamps actually be operable. However, the purpose of the federal standards
is described as follows: 


The purpose of this standard is to reduce traffic accidents and deaths and injuries
resulting from traffic accidents, by providing adequate illumination of the roadway,
and by enhancing the conspicuity of motor vehicles on the public roads so that their
presence is perceived and their signals understood, both in daylight and in darkness
or other conditions of reduced visibility. 



49 C.F.R. § 571.108, S2. Garza's interpretation of the federal regulations--that only the installation
of certain lighting equipment is required, without regard to whether such equipment actually
operates--is inconsistent with the regulations' stated purpose of "providing adequate illumination of
the roadway" and "enhancing the conspicuity of motor vehicles." Id. In order to preserve the purpose
of the regulations, we read the federal standards to require that vehicles be equipped with properly
functioning stoplamps, rather than merely requiring the existence of stoplamps, defective or not. 

 In light of the applicable federal regulations, the operation of a vehicle with one
functioning stoplamp and no second functioning stoplamp of equal height on the other side of the
vehicle's centerline constitutes a violation of the transportation code, provided the vehicle is less than
80 inches in width. Therefore, the trial court did not err in determining that the officers had
reasonable suspicion to believe that Garza was violating the transportation code at the time of the
traffic stop, or in denying the motion to suppress. Garza's second point of error is overruled. 


Legal Sufficiency

 In Garza's third point of error, he argues that the jury charge was incomplete and
improper with regard to the legality of the traffic stop, and that under a hypothetically correct jury
charge, the evidence is legally insufficient to support a finding that the traffic stop was based on a
violation of the transportation code. 

 Garza contends that the jury charge was improper because it did not instruct the jury
that the "third, middle, stoplamp" mounted on the cab of the truck could fulfill the transportation
code's stoplamp requirements. As previously discussed, we have determined that the presence of a
functioning stoplamp on one side of the vehicle without a second functioning stoplamp of equal
height, and one functioning stoplamp on the vertical centerline of the vehicle does not meet the
federal motor vehicle safety standards, which have been incorporated into the transportation code. 
See Tex. Transp. Code Ann. § 547.3215. Therefore, Garza's "third, middle, stoplamp" does not
fulfill the requirements of the transportation code and he was not entitled to language in the jury
charge to that effect. 

 Similarly, in light of our previous analysis of the relevant stoplamp requirements for
the vehicle in question, we reject Garza's argument that the State failed to carry its burden of proving
a violation of the transportation code. The jury was entitled to believe the officers' testimony that
Garza's left brake light was defective. See Rollerson v. State, 227 S.W.3d 718, 724 (Tex. Crim. App.
2007) (in conducting legal-sufficiency review, reviewing court must defer to jury's credibility and
weight determinations). Because Garza's defective brake light, as testified to by the officers,
constituted a violation of the transportation code, we hold that the evidence was legally sufficient to
find that the officers had reasonable suspicion to initiate the traffic stop. Garza's third point of error
is overruled.


CONCLUSION

 Because we have determined that the trial court did not err in failing to hold a hearing
on Garza's motion for new trial, that the trial court did not err in denying his motion to suppress, and
that the evidence was legally sufficient to uphold the jury's finding that the police had reasonable
suspicion to detain Garza, the judgment of conviction is affirmed.


__________________________________________ Diane M. Henson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed: July 24, 2008

Publish
1. The video also shows the brake light malfunctioning as the vehicle turned into the
convenience store parking lot, as Sullivan described. 
2. The Fourth Amendment to the U.S. Constitution provides that "[t]he right of the people
to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,
shall not be violated." U.S. Const. amend. IV. 
3. The record reflects that the vehicle Garza was driving on the night of the offense was a
1998 Dodge Ram.
4. The transportation code refers to brake lights as "stoplamps." See Tex. Transp. Code Ann.
§ 547.323(d) (West 1999) ("A stoplamp shall emit a red or amber light, or a color between red and
amber, that is . . . displayed when the vehicle service brake is applied.").
5. This Court took judicial notice during oral argument, and the parties do not dispute, that
a 1998 Dodge Ram is less than 80 inches in overall width.
6. The Fort Worth court of appeals has also arrived at this conclusion under similar facts. See
Starrin v. State, No. 02-04-00360-CR, 2005 Tex. App. LEXIS 10268, at *2-3
(Tex. App.--Fort Worth 2005, no pet.) (mem. op., not designated for publication).