**Opinion filed November 30, 2011**



In The

# Eleventh Court of Appeals

_____

## No. 11-09-00341-CR

_____

## JOHN MARK EVANS, Appellant

## V.

## STATE OF TEXAS, Appellee

On Appeal from the 91st District Court

Eastland County, Texas

Trial Court Cause No. 21934

## M E M O R A N D U M   O P I N I O N

Appellant, John Mark Evans, was convicted of felony driving while intoxicated after a trial to the court. At punishment, the trial court found the enhancement allegations of prior convictions to be true and assessed Appellant's punishment at thirty-two years confinement in the Texas Department of Criminal Justice, Institutional Division. Appellant raises three issues challenging the trial court's decision. First, he contends that his continued detention by Officer Bryan R. Vest of the Ranger Police Department to await the arrival of Texas Department of Public Safety Trooper Shaun Lewis constituted an unreasonable detention in violation of the

Fourth Amendment. U.S. CONST. amend. IV. Second, Appellant argues that the trial court abused its discretion by failing to consider the evidence in support of a "not true" finding on the jurisdictional and habitual-offender enhancement paragraphs. Finally, Appellant asserts that the trial court erred by failing to allow him to review the presentence investigation report at least forty-eight hours before the sentencing. We affirm.

Appellant filed a pretrial "Motion to Suppress Test, Video, Statements." At the hearing on the motion, the trial court heard testimony from Officer Vest and Trooper Lewis about the events leading to the arrest.

Officer Vest was on duty when he received a call from dispatch about a possible drunk driver heading eastbound on Interstate 20. He was advised to look for a blue Cadillac Coupe de Ville with a certain license plate number. Officer Vest spotted the vehicle near the edge of the Ranger city limits at mile marker 353. He followed the vehicle for approximately one mile and observed the vehicle weaving within the right and left lanes of traffic. Officer Vest pulled the vehicle over around mile marker 354, and when he went up to the vehicle, he found Appellant in the driver's seat.

Officer Vest testified that he could smell "a light odor of alcohol coming from the vehicle." He also saw an ice chest in the back in which there was alcohol in plain view; none of the individual containers were open. A check of Appellant's driver's license revealed that the license had been suspended and that a surcharge was due.

Officer Vest radioed for assistance. Trooper Lewis was not close enough initially to catch up with Appellant; the police department intercepted the vehicle for him. Officer Vest also testified that, because the odor of alcohol was present and because of the driving he had seen, he had a reasonable suspicion that Appellant might be intoxicated and that he could not let Appellant go.

Trooper Lewis testified that, at the time of the suppression hearing, he had been a certified peace officer for eleven years and had been stationed in Eastland County for five years. Officer Vest testified that, at the time of the suppression hearing, he had two years of experience with the Ranger Police Department and four and one-half years total experience as a certified peace officer. Trooper Lewis testified that he arrived at the scene approximately fifteen minutes after the vehicle was stopped. Upon approaching Appellant, Trooper Lewis observed "a slight odor of alcohol coming from his breath, and his eyes were that drunk look. He had the glazed

2

eyelids, plus his eyes were red." Trooper Lewis testified that he was certified to conduct field sobriety tests; he had been trained in the Horizontal Gaze Nystagmus test (HGN). Shortly after his arrival and initial encounter with Appellant, Trooper Lewis began to administer standard field sobriety tests consisting of the HGN test, the walk-and-turn test, and the one-leg stand test. Appellant failed the first two, and because he attempted but was unable to complete the one-leg stand test, this was also deemed a failure.

Trooper Lewis stated that he had made an estimated total of over 100 DWI arrests in the course of his career. Based on this experience, he formed an opinion that Appellant was intoxicated to the extent that he was suffering a loss of the normal use of his physical faculties; Trooper Lewis then placed Appellant under arrest. After receiving a statutory warning, Appellant consented to a breathalyzer test. After hearing testimony, the trial court denied Appellant's motion.

In his first issue, Appellant argues that the trial court should have granted his motion to suppress because the delay in the DWI investigation, while they waited for Trooper Lewis's arrival, rendered the continued detention unreasonable under the Fourth Amendment. Appellant does not challenge the propriety of the initial stop, but argues that he was held for a longer period than was reasonable and, thus, that any evidence obtained as a result of the stop should have been suppressed.

When reviewing a trial court's ruling on a motion to suppress evidence, we apply a bifurcated standard of review, giving almost total deference to a trial court's determination of historical facts and reviewing de novo the trial court's application of the law of search and seizure. *Valtierra v. State*, 310 S.W.3d 442, 447–48 (Tex. Crim. App. 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). On appeal, the question of whether a specific search or seizure is "reasonable" under the Fourth Amendment as applied to a trial court's express or implied determination of historical facts is subject to de novo review. *Kothe v. State*, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004). In reviewing the trial court's decision, we do not engage in our own factual review. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Valtierra*, 310 S.W.3d at 447 (citing *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000)). Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial

court's ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court does not file findings of fact, we view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record. *Id*. at 818–19; *see also Ross*, 32 S.W.3d at 855–56; *Carmouche*, 10 S.W.3d at 328. If the trial judge's decision is correct on any theory of law applicable to the case, the decision will be sustained. *Kelly*, 204 S.W.3d at 819 n.21 (citing *Ross*, 32 S.W.3d at 855–56; *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990)). Thus, in deciding whether Appellant's continued detention to await the arrival of Trooper Lewis was "reasonable" under the specific circumstances presented, we view the trial court's implied factual findings in the light most favorable to its ruling, but we decide the issue of "reasonableness" as a question of Fourth Amendment law. *Kothe*, 152 S.W.3d at 63.

Since it is not disputed that the initial stop and detention by Officer Vest was reasonable, we need only address whether at some point the stop became unreasonable. Although the length of a detention may render a traffic stop unreasonable, there is no rigid, bright-line time limitation. *United States v. Sharpe*, 470 U.S. 675, 679 (1985). Instead, common sense and ordinary human experience must govern over rigid criteria. *Id.* at 685. The reasonableness of the duration of a detention depends on whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant. *Id.* at 686. In determining the reasonableness of the duration of a detention, the trial and appellate courts may consider legitimate law enforcement purposes served by any delay in the officer's investigation. *Id.* at 685. Fourth Amendment reasonableness requires a balance between the public interest served and the individual's right to be free from arbitrary detentions and intrusions. *Kothe*, 152 S.W.3d at 63.

Following these controlling decisions, Texas courts likewise have held that a delay in an officer's required investigation to confirm or dispel the officer's suspicions of the suspect and a resultant prolonged detention are reasonable under the Fourth Amendment when the delay furthers legitimate law enforcement purposes. *Belcher v. State*, 244 S.W.3d 531, 539 (Tex. App.—Fort Worth 2007, no pet.); *see also Smith v. State*, No. 03-06-00085-CR, 2007 WL 700834, at *1, *4 (Tex. App.—Austin Mar. 7, 2007, pet. ref'd) (mem. op., not designated for publication) (holding delay in DWI investigation primarily for arrival of rookie officer for purpose of training was reasonable because delay furthered legitimate law enforcement

purposes); *Dickson v. State*, No. 03-06-00126-CR, 2006 WL 3523789, at *1, *4 (Tex. App.—Austin Dec. 6, 2006, no pet.) (mem. op., not designated for publication) (holding approximately twenty-minute delay in DWI investigation primarily to await arrival of DWI enforcement officer with superior training was reasonable because delay furthered reasonable law enforcement purposes); *Hartman v. State*, 144 S.W.3d 568, 572–73 (Tex. App.—Austin 2004, no pet.) (holding delay of five to fifteen minutes in DWI investigation, primarily so that another officer could bring a video camera to the scene per department policy, was reasonable because delay furthered legitimate law enforcement purposes).

From the initial stop of Appellant, Officer Vest asked Appellant routine questions that were related in scope to Appellant's detention for the traffic offenses and to a DWI investigation. It is conceded that this portion of Appellant's detention was reasonable and did not violate any aspect of the Fourth Amendment. *See, e.g., Kothe*, 152 S.W.3d at 63–64 (discussing police actions that may be taken in connection with traffic stop).

Appellant argues that this was a routine traffic stop based on probable cause formed by the observance of a driving infraction, the failure to maintain a single lane, and that his detention should have terminated after the license check was concluded. However, if, while investigating a traffic violation, an officer develops reasonable suspicion that another offense has occurred, the scope of the initial investigation expands to include the new offense. *Goudeau v. State*, 209 S.W.3d 713, 719 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Officer Vest immediately smelled alcohol upon approaching the vehicle, saw an open cooler of alcoholic beverages in plain view in the backseat, and heard appellant's admission that he had had a "few" drinks. All of this occurred prior to the completion of the license check. This gave Officer Vest reasonable suspicion that appellant was engaged in criminal activity and justified continued detention for the purpose of determining Appellant's level of impairment. *See Thomas v. State*, 336 S.W.3d 703, 709–10 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (officer justified in continuing detention after stopping vehicle for unrelated traffic violation when, on approaching driver after stop, he smelled alcohol on driver's breath).

Appellant also argues that Officer Vest's decision to delay the investigation while waiting for Trooper Lewis to arrive and conduct field sobriety tests was unreasonable. Trooper Lewis arrived on the scene approximately fifteen minutes after Officer Vest first pulled Appellant over. Approximately eight minutes passed between the time the license check was completed—the

5

point in time that Appellant argues should have been the conclusion of Appellant's detention—and the arrival of Trooper Lewis. The general rule is that an investigative stop can last no longer than necessary to effectuate the purpose of the stop. *Florida v. Royer*, 460 U.S. 491, 500 (1983); *Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997). But, the continuation of a valid detention for a brief period of time to further legitimate law enforcement purposes is reasonable under the Fourth Amendment. *Sharpe*, 470 U.S. at 686; *Hartman*, 144 S.W.3d at 573. Legitimate law enforcement purposes include a delay to permit the arrival of a DWI enforcement officer with superior training, a delay for the arrival of a video camera in accordance with department procedures, and a delay to permit the arrival of a rookie officer who needs training so that the supervisory officer initiating the stop can return to duty. *Hartman*, 144 S.W.3d at 573.

Officer Vest's decision to call for assistance was based on Ranger Police Department policy and on the fact that Trooper Lewis had superior training in field sobriety testing. Officer Vest testified that he stopped Appellant on the interstate and that it was police department policy not to work on the interstate but to defer to highway patrol. Though Officer Vest testified at trial that he could have handled the field sobriety tests himself, he chose to follow policy and to defer to Trooper Lewis's superior training and experience with highway enforcement.

At trial, Officer Vest testified that he had been certified in field sobriety testing for less than a year and that this was his first DWI stop; Trooper Lewis testified that he had made "[t]oo many [DWI arrests] to count," but approximately 100 over the course of his career. Officer Vest had never performed a field sobriety test, but he testified that he knew "Texas Highway Patrol are certified and deal with them all the time." He also testified that the highway "is a trooper's jurisdiction" and that the City of Ranger Police Department does not work the interstate. Officer Vest stayed at the scene after Trooper Lewis's arrival to "observe and get more training on field sobriety" testing. It has been held that a delay by a senior officer to allow for a junior officer's arrival in order to observe field sobriety testing is a legitimate law enforcement purpose. *Belcher*, 244 S.W.3d at 541. It has been held that a delay in an investigation for the purpose of involving an officer who would bring greater expertise to the scene is a legitimate law enforcement purpose. *See Sharpe*, 470 U.S. at 687 n.5. It has also been held that a delay for the purpose of exercising department policy is a legitimate law enforcement purpose. *Hartman*, 144 S.W.3d at 570.

6

The issue is not whether Officer Vest pursued the least intrusive means possible, it is whether his actions were reasonable under the circumstances. *Sharpe*, 470 U.S. at 685–86. Here, Officer Vest followed his department's policy of not working the interstate, waited for assistance from an officer with superior training, and made use of the opportunity to gain more training in field sobriety. We hold that this delay was done for legitimate law enforcement purposes. We further hold that it was reasonable to call Trooper Lewis to the scene, where he then diligently pursued a means of investigation, a field sobriety test, that was likely to confirm or dispel the officers' suspicions quickly. Appellant's first issue is overruled.

In his second issue, Appellant argues that the trial court abused its discretion in failing to find the enhancement paragraphs "not true." The certified copies of prior convictions were entered into evidence without objection at trial, and Appellant does not now argue that the State failed in its burden of proof. Rather, Appellant intimates that the age of a prior conviction vitiates its use for enhancement purposes. However, as the State correctly points out, there is ample authority holding that prior convictions may be used to enhance, no matter how remote. *See Joles v. State*, 563 S.W.2d 619, 621–22 (Tex. Crim. App. 1978) (holding that a previous DWI conviction could be used for enhancement purposes, no matter how remote); *Hicks v. State*, 545 S.W.2d 805, 810 (Tex. Crim. App. 1977) (holding remote convictions may be utilized for enhancement purposes). Appellant's second issue is overruled.

Appellant asserts in his third issue that the trial court did not comply with Article 42.12, section 9 of the Code of Criminal Procedure because trial counsel did not receive the presentence investigation report at least forty-eight hours prior to Appellant's sentencing. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 9(d) (West Supp. 2011). At trial, Appellant's counsel stated that he received the presentence investigation report the morning of the sentencing and that he had not had an opportunity to review the report. The discussion between appellant's counsel and the trial court reflects that the trial court did not abide by the 48-hour review requirement. However, Appellant failed to preserve this error by making a specific objection and obtaining a ruling.

To preserve a complaint for appellate review, a party must make a timely, specific objection and obtain a ruling from the trial court. TEX. R. APP. P. 33.1(a). Article 42.12, section 9(d) rights may be waived by virtue of the express language of the statute: "(d) *Unless waived by the defendant*, at least 48 hours before sentencing a defendant, the judge shall permit the defendant or his counsel to read the presentence report." Article 42.12, section 9(d)

(emphasis added). Courts have held that Article 42.12, section 9 rights are subject to waiver because they are in a category of rights that can be forfeited via "procedural default." *See Smith v. State*, 91 S.W.3d 407, 409–10 (Tex. App.—Texarkana 2002, no pet.) (failure of the defendant to object at trial to lack of PSI report waived his complaint); *Buchanan v. State*, 68 S.W.3d 136, 140 (Tex. App.—Texarkana 2001, no pet.) (appellant did not object to the trial court's failure to order a PSI report, thus he waived any complaint); *Wright v. State*, 873 S.W.2d 77, 82–83 (Tex. App.—Dallas 1994, pet. ref'd) (concluding that waiver need not be express and that, like most evidentiary and procedural rules in our system, section 9(a) is subject to procedural default). As a defendant can waive his right to have any PSI report at all, he can also waive his right to 48–hour advance review of that report. *Henderson v. State*, No. 10-07-00030-CR, 2008 WL 598430, at *1 (Tex. App.—Waco March 5, 2008, no pet.) (mem. op., not designated for publication) (trial counsel failed to preserve right to 48-hour review of PSI because counsel did not object at trial); *Brocato v. State*, No. 11-06-00202-CR, 2008 WL 2246878, at *5 (Tex. App.—Eastland May 29, 2008, no pet.) (mem. op., not designated for publication); *Pettit v. State*, No. 14-06-00396-CR, 2007 WL 1319441, at *1 (Tex. App.—Houston [14th Dist.] May 8, 2007, pet. ref'd) (mem. op., not designated for publication); *see also Pye v. State*, No. 03-06-00306-CR, 2009 WL 483239, at *8 (Tex. App.—Austin Feb. 27, 2009, pet. denied) (mem. op., not designated for publication) ("Appellant's contention of a lack of statutory compliance [with Article 42.12, section 9(d)] was not raised at trial, in the motion for new trial, or at the hearing on said motion. A complaint on appeal must comport with the trial objection. . . . A trial court can hardly be faulted for not ruling on a matter raised for the first time on appeal."). Thus, a defendant forfeits his Article 42.12, section 9(d) right to a 48-hour review of a PSI report if he fails to insist upon it by objection, request, motion, or some other behavior calculated to exercise the right. *See Wright*, 873 S.W.2d at 82–83. To preserve error, the defendant must make a specific objection at the earliest possible opportunity. *Id.* at 83. The complaining party must obtain an adverse ruling from the trial court. *Id.*

Appellant waived his Article 42.12, section 9(d) right to forty-eight hours of review by failing to urge his right by request, motion, or other behavior calculated to exercise the right. *See Wright*, 873 S.W.2d at 82. It is true that trial counsel told the trial court that he had not had a chance to review the report, but he never objected and did not ask for forty-eight hours before sentencing to read the report. Before sentencing, the trial court asked defense counsel for any

legal reason why the court should not sentence Appellant that day. Defense counsel replied, "No, Your Honor." Appellant waived his Article 42.12, section 9(d) right to forty-eight hours of review of the PSI report. *Id.* at 83.

Moreover, even if appellant had preserved error, he has not shown how he was harmed by the failure of the trial court to give him forty-eight hours. *See* Article 42.12, section 9(e) ("The judge shall allow the defendant or his attorney to comment on a presentence investigation or a postsentence report and, with the approval of the judge, introduce testimony or other information alleging a factual inaccuracy in the investigation or report."). Appellant has not shown that there were factual inaccuracies within the PSI report. We conclude on this record that harm has not been demonstrated. *See* TEX. R. APP. P. 44.2(b) (nonconstitutional errors that do not affect substantial rights must be disregarded); W*yatt v. State*, No. 14-10-00714-CR, 2011 WL 2566359, at *3 (Tex. App.—Houston [14th Dist.] June 30, 2011, no pet.) (mem. op., not designated for publication) (defendant objected at trial to less than forty-eight hours notice, but his issue on appeal was overruled because he did not show he was harmed as a result of the violation). Appellant's third issue is overruled.

The judgment of the trial court is affirmed.

ERIC KALENAK
JUSTICE

November 30, 2011

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.