In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00034-CR

                                                ______________________________

 

 

JAMES
CHRISTOPHER EMMERS, Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                         On Appeal from the 6th Judicial District Court

                                                             Lamar County, Texas

                                                            Trial
Court No. 23765

 

                                                            
                                      

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                     MEMORANDUM 
OPINION

 

            James
Christopher Emmers was charged in a two-count indictment with possession of
methamphetamine with intent to deliver in a drug-free zone and possession of
marihuana in a drug-free zone.  Both
counts charged Emmers as a repeat offender. 
Prior to trial, Emmers filed a motion to suppress evidence, which the
trial court denied.  After pleading
guilty to both charges, Emmers was sentenced to two twenty-year terms of imprisonment,
to run concurrently.  Emmers appeals the
trial court’s denial of his motion to suppress evidence.  We affirm the judgment of the trial court.

I.          FACTS

            The only testimony
presented during Emmers’ suppression hearing was that of Officer Joseph Gordon
of the Paris Police Department.  Gordon
testified that on the night of March 18, 2010, he was patrolling the area of
5th and Tudor Streets.  As he crossed the
intersection of 5th Northeast and Provine Streets, Gordon saw a vehicle
approaching in the opposite lane of traffic. 
The vehicle, operated by Emmers, crossed over into the oncoming lane of
traffic and then swerved back into the correct lane.  There are no dividers between the lanes.  There was no traffic in the area other than
Gordon, who was driving at a slow rate of speed.  After crossing into Gordon’s lane and
swerving back into his lane, Emmers backed into an area known as the
Cornet.  In doing so, Emmers backed in
front of Gordon, causing Gordon to yield in order to avoid an accident.  At that point, Gordon made contact with Emmers
for failing to maintain a single lane of traffic and for failure to yield the
right-of-way to oncoming traffic.  Emmers
handed Gordon a piece of paper and then fled on foot.  Gordon was able to apprehend and arrest Emmers.  Upon conducting an inventory search of
Emmers’ vehicle incident to arrest, Gordon located over a pound of marihuana
and approximately thirty grams of methamphetamine.  

            Emmers
filed a motion to suppress this evidence, alleging the traffic stop was
unlawful.  At the suppression hearing,
Gordon testified that he approached Emmers’ vehicle because Emmers failed to
maintain a single lane of traffic and because Emmers failed to yield the right-of-way
to oncoming traffic.  Both the State and Emmers
argued over whether Gordon had reasonable suspicion to make the stop.  See
Terry v. Ohio, 392 U.S. 1 (1968).

II.        MOTION TO SUPPRESS

            In his sole
appellate point, Emmers argues that the trial court erred in denying his motion
to suppress because the facts here do not rise to the level of reasonable
suspicion necessary to justify the traffic stop.  

            A.        Standard
of Review and Applicable Law

            We review a trial
court’s decision on a motion to suppress evidence by applying a bifurcated
standard of review.  Graves v. State, 307 S.W.3d 483, 489 (Tex.
App.—Texarkana 2010, pet. ref’d); Rogers v. State, 291 S.W.3d 148, 151 (Tex. App.—Texarkana 2009, pet. ref’d).
While we defer to the trial court on its determination of historical facts and
credibility, we review de novo its application of the law and determination of
questions not turning on credibility.  Wiede
v. State, 214 S.W.3d 17, 25
(Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85, 89 (Tex.
Crim. App. 1997); Graves,
307 S.W.3d at 489.  We also afford
deference to a trial court’s “application of law to fact questions,” also known
as “mixed questions of law and fact,” if the resolution of those questions
turns on an evaluation of credibility and demeanor.  Guzman, 985 S.W.2d at 89. 
Because no findings of fact or conclusions of law were filed, we will
assume the trial court made implicit findings of fact that support its ruling
as long as those findings are supported by the record.  Torres
v. State, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005).  The trial court’s evidentiary ruling “will be
upheld on appeal if it is correct on any theory of law that finds support in
the record.”  Gonzalez v. State, 195 S.W.3d 114, 126 (Tex. Crim. App. 2006).

            A
“stop” by a law enforcement officer “amounts to a sufficient intrusion on an
individual’s privacy to implicate the Fourth Amendment’s protections” against
unreasonable searches and seizures.  Carmouche v. State, 10 S.W.3d 323, 328
(Tex. Crim. App. 2000).  However, it is
well-established that a law enforcement officer may stop and briefly detain a
person suspected of criminal activity on less information than is
constitutionally required for probable cause to arrest.  Terry,
392 U.S. at 21; Carmouche, 10 S.W.3d
at 328.  In order to stop or briefly
detain an individual, an officer must have “reasonable suspicion” that an
individual is violating the law.  Ford v. State, 158 S.W.3d 488, 492 (Tex.
Crim. App. 2005).

            Gordon
testified that he stopped Emmers for what he believed to be two different
traffic violations.  To justify a traffic
stop, the officer must have observed specific objective, articulable facts
which, in light of the officer’s experience and personal knowledge, together
with inferences from those facts, would warrant a reasonable person to believe
a traffic violation occurred.  Id. at 492–93; Bass v. State, 64 S.W.3d 646, 648 (Tex. App.—Texarkana 2001, pet.
ref’d).  This objective standard
disregards the subjective intent of the officer making the stop, and is based
on the totality of the circumstances.  Ford, 158 S.W.3d at 492–93.

            B.        Failure
to Maintain Single Lane of Traffic

            Emmers
initially asserts the trial court erred in determining that Gordon had
reasonable suspicion to stop him based on the fact that he briefly crossed into
Gordon’s lane of traffic.  Section
545.060(a) of the Texas Transportation Code provides:

            Driving on Roadway Laned for Traffic

            (a)        An operator on a roadway divided into
two or more clearly marked lanes for traffic:

 

                        (1)        shall drive as nearly as practical
entirely within a single lane; and

 

                        (2)        may not move from the lane unless that
movement can be made safely.

 

Tex.
Transp. Code Ann. § 545.060 (West 2011).[1]  Gordon testified that there are no dividers
between the lanes of 5th Northwest Street, and the lanes are not clearly
marked.  Emmers maintains that since the
lanes on 5th Northwest Street are not clearly marked, crossing into the opposite
lane is not a violation of this section of the Texas Transportation Code, which
specifically applies to roadways divided into two or more clearly marked lanes
for traffic.  

            The
State maintains that it was not required to show that a traffic offense was
actually committed; rather, it was only required to show that the officer
reasonably believed a violation was in progress.  Green v. State, 93 S.W.3d
541, 545 (Tex. App.—Texarkana 2002, pet. ref’d) (while there is no requirement
that traffic regulation was actually violated, officer must reasonably believe
violation was in progress); Zervos v.
State, 15 S.W.3d 146, 152 (Tex. App.—Texarkana 2000, pet. ref’d) (“[I]t is
not necessary to show that Zervos actually violated the traffic laws.”).  Gordon testified, upon questioning by the
State, regarding Emmers’ failure to maintain a single lane of traffic:

            Q.        [By State]  Tell the Judge if you see a traffic violation
here shortly [viewing video recording from Gordon’s patrol vehicle].

 

            A.        [By Gordon]  Right there, he’s in the oncoming lane and he
swerves back into his lane.

 

            Q.        Okay. 
If he drives in the wrong lane, is that a ticketable offense?

 

            A.        Yes.

 

            Q.        Under the Transportation Code?

 

            A.        Yes.

 

            Q.        When he swerved over there, was that a
ticketable offense?

 

            A.        Yes.

 

            The
State maintains that Emmers committed a violation of Section 545.560 and that
even if there was no actual violation, Gordon nevertheless reasonably believed
Emmers violated this section of the Code.  Emmers complains that this conclusion is based
on a mistaken understanding of the traffic laws, and, therefore, cannot form
the basis of a reasonable suspicion for the traffic stop.[2]  While it is true that the State “need not
establish with absolute certainty that a crime has occurred in order to show
reasonable suspicion,” courts are not to defer to a police officer’s legal
conclusions.  Garcia v. State, 43 S.W.3d 527, 530–31 (Tex. Crim. App. 2001).  Since Garcia,
Texas appellate courts have recognized that an officer’s honest, albeit mistaken,
understanding of the traffic law which prompted a stop is not an exception to
the reasonable suspicion requirement.  Fowler v. State, 266 S.W.3d 498, 504
(Tex. App.—Fort Worth 2008, pet. ref’d); Goudeau
v. State, 209 S.W.3d 713, 716 (Tex. App.—Houston [14th Dist.] 2006, no
pet.).  Thus, an officer’s suspicion of
an alleged traffic violation cannot be based on a mistaken understanding of the
traffic laws.  Goudeau, 209 S.W.3d at 716.  

            Emmers
argues that because the roadway in question was unmarked, Section 545.060
cannot, by definition, apply to his alleged movement from the right lane.  Therefore, Gordon’s conclusion that Emmers
failed to maintain a single lane of traffic was based on a mistaken
understanding of the traffic laws.[3]  We disagree. 
Gordon did not testify that Emmers’ action of crossing into the oncoming
traffic lane was a violation of Section 545.060; rather, Gordon testified that
driving in the wrong lane is a “ticketable offense.”  Gordon further testified that he was unsure
if the offense of the failure to maintain a single lane of traffic required
marked lanes.  While it is true that the
cross-over here did not amount to a violation of Section 545.060, as that
section only applies to marked traffic lanes, such a cross-over supports a
reasonable suspicion that a traffic law violation has taken place.[4]

            Section
545.051 of the Texas Transportation Code provides that “an operator on a
roadway of sufficient width shall drive on the right half of the roadway”
unless passing another vehicle, an obstruction necessitates moving the vehicle
to the left of the center of the roadway, the operator is on a roadway divided
into three marked lanes for traffic, or the operator is on a roadway restricted
to one-way traffic.  Tex. Transp. Code Ann. § 545.051(a)
(West 2011).  Gordon testified that he
watched Emmers cross into the opposing lane of traffic.  The video recording from Gordon’s patrol
vehicle reflects an unmarked, unobstructed roadway.  

            The
fact that the roadway here did not have a center stripe is of no consequence in
making the determination of whether Gordon reasonably suspected the occurrence
of a traffic law violation.  Section
545.051 of the Texas Transportation Code does not limit the requirement of
driving in the right lane only to roadways marked with a center stripe.  Tex.
Transp. Code Ann. § 545.051(a). 
Moreover, the fact that the cross-over did not appear to be unsafe is of
no consequence in determining whether Emmers committed a traffic
violation.  Section 545.051 does contain
a safety exception for movement from the right half of the roadway.  See
Bracken v. State, 282 S.W.3d 94, 98–99 (Tex. App.—Fort Worth 2009, pet.
ref’d) (because Section 545.051(a) does not contain an “unless movement can be
made safely” exception to prohibition against crossing center, issue of whether
such movement could be made safely is irrelevant to analysis of reasonable
suspicion).

            Gordon
testified that Emmers drove left of center and then swerved back into the right
lane.  Gordon’s observation was enough to
create a reasonable suspicion that a traffic violation was in progress.  See
Rubeck v. State, 61 S.W.3d 741, 745 (Tex. App.—Fort Worth 2001, no pet.)
(officer’s observation of defendant’s vehicle crossing center line one time
provided reasonable suspicion for traffic stop).  Moreover, the digital photograph taken from
Gordon’s patrol vehicle clearly depicts Emmers’ vehicle in Gordon’s lane of
traffic.[5]  Accordingly, we conclude that Gordon had
reasonable suspicion that a traffic violation was committed by virtue of the
fact that Emmers failed to remain in the right half of the roadway, in
violation of Section 545.051(a) of the Texas Transportation Code.[6]

            C.        Failure to Yield Right-of-Way

            Gordon’s
second justification of reasonable suspicion to stop Emmers was Emmers’ act of
backing into the Cornet, which amounted to a failure to yield the right-of-way
to oncoming traffic.[7]  Section 545.152 of the Texas Transportation
Code provides:

            Vehicle Turning Left

To turn left at an intersection or into an alley
or private road or driveway, an operator shall yield the right-of-way to a
vehicle that is approaching from the opposite direction and that is in the
intersection or such proximity to the intersection as to be an immediate
hazard.

 

Tex.
Transp. Code Ann. § 545.152 (West 2011).

            Emmers
contends that Gordon lacked reasonable suspicion to initiate a stop for failure
to yield the right-of-way because Emmers posed no immediate hazard to Gordon,
as required by the Code.  Gordon
testified that the stop was justified:

            Q.        [By Emmers’ attorney]  Okay. 
And then third is that he backed across the road?

 

            A.        [By Gordon]  Yes.

 

            Q.        And what violation is that?

 

            A.        Failed to yield right-of-way.

 

            Q.        Okay. 
Failed to yield right-of-way, vehicle turning left?

 

            A.        Or to oncoming traffic.  He failed to yield right-of-way to oncoming
traffic.  He backed in front of me.  I, essentially, had to yield to him by
stopping.

 

            .
. . .

 

            Q.        You speed up to 13 miles an hour,
correct?

 

            A.        Yes.

 

            Q.        Then you slow down to 11 miles an hour.

 

            A.        Okay.

 

            Q.        As you approach his vehicle, you slow
down to 8 miles an hour, correct?

 

            A.        I believe so.  I wasn’t watching it.

 

            .
. . .

 

            Q.        And there was never any rapid deceleration
of speed?

 

            A.        No -- I didn’t have to slam on my
brakes, no, I didn’t.

 

            Q.        Okay. 
So to the extent the police report indicates that you had to stop
abruptly, that would not be correct wording?

 

            A.        . . . . I’m not sure how accurate the
speed on that is -- is correlated with actual speed of the vehicle.  But, I can tell you from operating the
vehicle that I felt like I had to stop abruptly to avoid colliding.  If I’d have maintained my speed, without a
doubt, I would’ve collided with his vehicle. 


 

            Emmers
contends there was no immediate hazard created by temporarily blocking Gordon’s
lane of traffic as he backed into the Cornet. 
The State maintains that Gordon’s testimony establishes that Emmers’
actions created an immediate hazard. As previously stated, proof that a statute
was violated is not required to determine reasonable suspicion.  We, therefore, review the record before us to
determine whether Gordon reasonably thought Emmers had committed a traffic
offense.  Zervos, 15 S.W.3d at 152. 
Here, Gordon testified that he believed a collision would have occurred
had he not reduced his speed.  The issue
of whether this testimony supports a reasonable belief that a traffic violation
occurred turns on the evaluation of Gordon’s credibility and demeanor.  The trial judge is the sole trier of fact and
judge of the credibility of the witnesses and the weight to be given their
testimony.  Wiede, 214 S.W.3d at 24–25. 
We could thus conclude that Emmers’ action of maneuvering his vehicle in
front of Gordon’s, causing Gordon to reduce his speed in order to avoid a
collision, provided a reasonable suspicion that Emmers violated Section 545.152
of the Texas Transportation Code.  See Tex.
Transp. Code Ann. § 545.152. 
However, because the evidence is clear that reasonable suspicion for the
traffic stop existed by virtue of the fact that Emmers failed to remain in the
right half of the roadway, we need not rule on this issue.

III.       CONCLUSION

            We
affirm the judgment of the trial court.

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          June
8, 2011

Date Decided:             June
23, 2011

 

Do Not Publish











[1]With
respect to the alleged offense of failure to maintain a single lane of traffic,
both parties identify the controlling statute as Section 545.060 of the Texas
Transportation Code.  Tex. Transp. Code Ann. § 545.060.  

 





[2]Emmers
contends that even if the lanes were marked, there would be no reasonable
suspicion here because the failure to maintain a single lane is a violation
only when movement out of that lane cannot be made safely.  Emmers maintains that his actions were not
unsafe.  See Tex. Transp. Code Ann.
§ 545.060(a)(2).  Because we find Section
545.060 of the Texas Transportation Code does not apply to the alleged offense,
we do not address this contention.

 





[3]The
State further contends that Gordon’s characterization of the cross-over as a
failure to maintain a single lane of traffic was not a mistake of law because Section
545.060(a) requires such movements to be made safely.  Because it contends Emmers’ movement out of
his lane of traffic was unsafe, the State maintains that Emmers’ reliance on Goudeau is misplaced.  We disagree. 
The statute does not create two, separate offenses.  Rather, Section 545.060(a) creates a single,
two-part offense of (1) moving out of a marked lane (2) when it is unsafe to do
so.  Fowler,
266 S.W.3d at 502; Hernandez v. State,
983 S.W.2d 867, 871 (Tex. App.—Austin 1998, pet. ref’d).  





[4]While
the record indicates Gordon filed a police report, that report is not a part of
the record before this Court.  We decline
to speculate as to the statutory basis of the alleged violation reflected in
the report, if any. 





[5]At
trial, the video recording from Gordon’s patrol vehicle was played.  The exhibit provided in the record here
depicts only a digital photograph of Emmers’ vehicle in Gordon’s lane of
traffic.

 





[6]Even
though the parties do not address the application of Section 545.051 to the
facts before us, this Court is obligated to uphold the trial court’s
evidentiary ruling under any theory of law that finds support in the record.  Gonzalez,
195 S.W.3d at 126.

 





[7]The
State contends on appeal that other specific, articulable facts inferred
intoxication, providing reasonable suspicion for the traffic stop.  Because we find reasonable suspicion for the
traffic stop existed due to alleged traffic violations, we do not address this
issue.